IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| S.B., as mother and guardian of her minor child D.M.,<br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF PHILADELPHIA, *et al.*,<br>　　　　　　　　　　Defendants. | Civ. No. 07-768 |

**MEMORANDUM/ORDER**

Presently before the court are motions to dismiss and motions to strike filed by defendants Denise Actie (Docket No. 11), Northeast Treatment Center (Docket No. 12), and Jenny Brice (Docket No. 26). These motions are now ripe for disposition.

**I.　Allegations**

Plaintiff S.B. is suing on behalf of her minor child, D.M., for events that took place while D.M. was in foster care. The City defendants[1] allegedly made the decision to place D.M. in foster care after S.B. exhibited erratic and dangerous behavior. Compl.

---

[1] This group is comprised of defendants City of Philadelphia and the Philadelphia Department of Human Services, the government agencies alleged to have placed D.M. in foster care, as well as defendants Cheryl Ransom-Garner, Arthur Evans, Shana Salley, Danielle Tucker, and five John Doe defendants, all of whom are alleged to be officers or employees of those agencies.

¶¶ 22–23. The NET defendants[2] allegedly selected D.M.'s foster home and were responsible for ensuring that she was cared for appropriately. *Id.* ¶¶ 24–28. Defendant Virginia Whitfield was allegedly D.M.'s foster mother, *id.* ¶ 26, and defendant Steven Whitfield allegedly lived in the foster home and assaulted D.M. *Id.*

The basic allegation is that the City and NET defendants assigned D.M., then ten years-old, to a home in which she was sexually abused by Steven Whitfield, Virginia Whitfield's teenage son. Plaintiff further alleges that Steven Whitfield had "a prior juvenile record" at the time of D.M.'s placement, *id.* ¶ 33, and that the City and NET defendants failed properly to supervise and manage the foster-care process. *Id.* ¶ 28.

From these basic facts, plaintiff has pleaded five causes of action against the moving defendants: (1) a § 1983 claim for violations of D.M.'s civil rights (Count I), (2) a § 1983 claim for violations of D.M.'s Fourth, Eighth, and Fourteenth Amendment rights (Count II); (3) a state-law negligence claim (Count III), (4) a state-law breach of fiduciary duty claim (Count IV), and (5) another state-law negligence claim (Count VI).[3]

## II.    Legal Standards

### A.    Motions to Dismiss

---

[2] This group is comprised of defendants Northeast Treatment Center ("NET"), a private entity that the City allegedly contracted with to place children in foster care and supervise foster parents, and its employees Jenny Brice, Danielle Byard, Denise Actie, and five John Doe defendants.

[3] Plaintiff also pleads several counts against the Whitfields that are not relevant to the disposition of this motion.

Under Federal Rule of Civil Procedure 12(b)(6), defendants who so move are entitled to the dismissal of complaints that "fail[] to state a claim on which relief can be granted." A court may only grant this relief if the allegations of the complaint do not "raise [the plaintiff's] right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1959 (2007). Keeping in mind that the rules of civil procedure require that a complaint contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it need do no more than "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

    **B.**    **Motions to Strike**

It is appropriate for a court to strike "redundant, immaterial, impertinent, or scandalous matter" from a complaint when an opposing party so moves. Fed. R. Civ. P. 12(f). Requests for punitive damages should be stricken as impertinent when the allegations cannot support such an award as a matter of law. *See, e.g.*, *Norman's Heritage Real Estate Co. v. Aetna Cas. & Sur. Co.*, 727 F.2d 911, 915 (8th Cir. 1984).

**III.**    **Analysis — Motions to Dismiss**

    **A.**    **The § 1983 Claims (Counts I & II)**

Defendants argue that Counts I and II suffer from two fatal defects: (1) defendants

are not state actors, and (2) plaintiff has not alleged the deprivation of a constitutional right.[4]

Private parties generally are not state actors; therefore, they generally do not owe other members of the public duties of care under the Due Process Clause of the Fourteenth Amendment. But when a government agency delegates its traditional function to a private party, that private party can become a state actor for Fourteenth Amendment purposes. *West v. Atkins*, 487 U.S. 42, 56 (1988) (holding that doctor hired by the state was a state actor because the state had delegated to him its traditional function of providing prison health care services). Here, plaintiff has alleged that the City agencies delegated to NET their traditional government functions of selecting foster parents, assigning them foster children, and generally supervising the foster-care process. Compl. ¶¶ 24–26. As in *West*, contracting out this function does not relieve the state of any constitutional obligations normally attendant to it, nor does it prevent children committed to the state's care from vindicating their constitutional rights. *West*, 487 U.S. at 56. Plaintiff's allegations are sufficient to support the legal conclusion that NET and its employees were performing a traditional state function on behalf of the state and were, therefore, state actors for purposes of the Fourteenth Amendment.

---

[4] I can discern no real difference between Count I and Count II. On the basis of the same facts, Count I alleges a violation of plaintiff's "civil rights," whereas Count II enumerates the constitutional amendments alleged to have been violated. In her memorandum of law, plaintiff argues both counts as deprivations of the Fourteenth Amendment right to substantive due process. Therefore, I will consider Counts I and II together and focus, as plaintiff has, on the Fourteenth Amendment issue.

As to whether plaintiff has alleged the deprivation of a constitutional right: plaintiff appears to proceed on the "special relationship" exception to the *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989), rule that the Due Process Clause does not impose on state actors any duty to protect members of the public from coming to harm at the hands of private third parties. Under the special relationship exception, when a person is removed from free society and placed under the care and control of a state actor, that person has a special relationship with the state actor sufficient to impose on the state actor a due process obligation to protect the person from harm. *See Nicini v. Moore*, 212 F.3d 798, 807 (3d Cir. 2000) (en banc). The Third Circuit has held that children placed in foster care have such a special relationship with the state, and thus a due process right to protection. *Id.* at 808 ("We now hold that when the state places a child in state-regulated foster care, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties. The failure to perform such duties can give rise, under sufficiently culpable circumstances, to liability under section 1983."). Because plaintiff was allegedly committed to the care of the NET defendants as state actors at the time of the events in suit, plaintiff has properly alleged the deprivation of a due process right to protection.

Defendants further argue that even if they had a constitutional duty of care, plaintiff has not properly alleged that they breached it because all plaintiff has alleged is negligence. Under controlling Third Circuit precedent, to breach its duty of care, the state

actor's behavior must rise above ordinary negligence; indeed, it must be egregious enough to "shock the conscience." *Id.* at 812. Here, plaintiff has alleged that the NET defendants knew that they were placing D.M., a ten year-old female, in a home with a male teenager who had a history of criminal behavior.[5] This allegation may, depending on the facts proved, reach a level of conscious disregard for the child's safety so egregious as to breach due process. Issues of this sort are fact-bound. They cannot be resolved on the pleadings. Therefore, I will not dismiss plaintiff's § 1983 claims.

### B.     The State-Law Negligence Claims (Counts III & VI)

In Counts III and VI, plaintiff has pleaded negligence claims against the NET defendants. Counts III and VI are largely indistinguishable in their substantive allegations; the primary difference appears to be that Count VI is pleaded against only the individual defendants (not NET itself), whereas Count III is pleaded against all of the moving defendants. In any event, because the underlying allegations are so similar, I will consider the viability of Counts III and VI together.

Defendants protest that plaintiff has not alleged enough specific facts to inform

---

[5] I note that plaintiff has pleaded in the alternative that the NET defendants did not know, but should have known, about the young man's history of sexual abuse. This alternative allegation appears to sound in negligence and likely is not cognizable as a constitutional claim, but, as the Third Circuit noted in *Nicini*, whether behavior is conscience-shocking depends heavily on the circumstances. *Nicini*, 212 F.3d at 811. Consistent with the circumstances described in the complaint, it is quite possible that plaintiff will adduce evidence that defendants' behavior was so grossly negligent or reckless that it shocks the conscience; therefore, it would not be appropriate to dismiss the complaint even if plaintiff alleged only that defendants' "should have known" that the Whitfield home was dangerous.

them of the substance of her negligence claims.  I disagree, and I direct defendants to Form 9 of the Federal Rules of Civil Procedure, which demonstrates how succinct a well-pleaded negligence count can be.  *See also Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (per curiam) (emphasizing that factual allegations need not be extensive or overly specific to satisfy the requirements of notice pleading).  From reading plaintiff's complaint, it is clear that plaintiff has alleged that defendants had a duty of care by virtue of their various relationships with the foster-home-placement-and-supervision process, and that they breached that duty by (1) not adequately vetting the Whitfields before placing D.M. in their care, and (2) not adequately supervising the Whitfields once D.M. was in their care.  For notice pleading purposes this is sufficient, as defendants have adequate notice to prepare a defense of their conduct in placing D.M. in the Whitfield home and supervising D.M.'s foster care.

      **C.**    **The State-Law Breach of Fiduciary Duty Claim (Count IV)**

Plaintiff has also alleged that in placing her daughter in a dangerous home and failing to supervise her properly, defendants have breached their fiduciary duty.  The key legal question here is whether the relationship between a foster child and those who place the child in foster care is a fiduciary one.  In Pennsylvania, it is well established that the relationship between guardian and ward is one of the archetypal fiduciary relationships.  *In re Estate of Mihm*, 497 A.2d 612, 615 (Pa. Super. Ct. 1985).  Moreover, at least one of our sister states has specifically described the relationship between a foster child and an

agency caring for foster children on behalf of the state as a fiduciary relationship.  *Doe v. Harbor Schools, Inc.*, 843 N.E.2d 1058, 1065 (Mass. 2006).  Pennsylvania courts have described the hallmarks of a fiduciary relationship as "trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other."  *In re Scott's Estate*, 316 A.2d 883, 885 (Pa. 1974).  Here, plaintiff alleges that her daughter was at the mercy of defendants to place her in safe home.  This allegation easily satisfies the *Scott's Estate* standard for creating a fiduciary relationship.  In addition, the conduct alleged—failing to vet carefully a prospective foster parent and failing to supervise that parent—may well, if proved, constitute breaches of defendants' fiduciary duties.  Therefore, I will deny defendants' motion to dismiss plaintiff's breach of fiduciary duty claim.

## IV.    Analysis — Motions to Strike

Defendants have asked that plaintiff's request for punitive damages on the state-law claims be stricken on the ground that plaintiff has not pleaded facts that would support a punitive damages award.  I disagree.  Under Pennsylvania law, punitive damages are available when the defendant's conduct is "'outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'"  *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984) (*quoting* Restatement (Second) of Torts § 908(2) (1979)).  Here, plaintiff has alleged that the defendants knowingly placed her daughter in a dangerous foster home.  That conduct, if proved, may well qualify as "outrageous," as it

appears to involve reckless indifference for the safety of a child placed in defendants' care. Thus, plaintiff's request for punitive damages is appropriate in light of her allegations and will not be stricken.

**V.     Conclusion**

AND NOW, this 12th day of October, 2007, it is hereby ORDERED that defendants' motions to dismiss and motions to strike are DENIED.

BY THE COURT:

/s/ Louis H. Pollak

_____
Pollak, J.